UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PITTSFIELD DEVELOPMENT, LLC, an Illinois limited liability company, PITTSFIELD RESIDENTIAL II, LLC, an Illinois limited liability company, and PITTSFIELD HOTEL HOLDINGS, LLC, an Illinois limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> ADAM DAVID LYND, <br><br> Defendant. | Case No.: <br><br><br> Plaintiffs demand trial by jury |

## COMPLAINT

Now comes the Plaintiffs Pittsfield Development, LLC ("Development"), Pittsfield Hotel Holdings, LLC ("Hotel") and Pittsfield Residential II, LLC ("Residential") (collectively, Development, Hotel and Residential shall be referred to as "Plaintiffs") by and through their attorneys Christopher Bargione, Adrian Vuckovich and Kathryne Hayes of Collins Bargione & Vuckovich and for their complaint against the Defendant Adam David Lynd ("Lynd") state as follows:

### Parties, Jurisdiction and Venue

1. Development is an Illinois limited liability company that maintains its principal place of business in Miami Beach, Florida. The members of Pittsfield Development, LLC are Joseph Sabet, Michael Sabet, 2025 Holdings, LLC, RAD Mortgage Fund 2010, LLC, Robbi Holdings, LLC and Rolen Sabet. Joseph Sabet is domiciled in Israel. Michael Sabet is domiciled in the State of Florida. Rolen Sabet is domiciled in the State of New York. 2025 Holdings, LLC is a Delaware limited liability company. The sole member of 2025

1

Holdings, LLC is JEZ Holdings, LLC, a Delaware Limited Liability Company whose members are Robert Danial, Mojdeh Khaghan, Joshua Danial, Ethan Danial and Zachary Danial. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Joshua Danial is domiciled in New York. Ethan Danial is domiciled in Puerto Rico. Zachary Danial is domiciled in Puerto Rico. RAD Mortgage Fund 2010, LLC is a Delaware limited liability company. The only member of RAD Mortgage Fund 2010, LLC is Ariel Holdings LLC, a Delaware Limited Liability Company whose members are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico and Mojdeh Khaghan is domiciled in Florida. Robbi Holdings, LLC is a Delaware limited liability company. The members of Robbi Holdings, LLC are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico and Mojdeh Khaghan is domiciled in Florida.

2. Hotel is an Illinois limited liability company that maintains its principal place of business in Miami Beach, Florida. The members of Pittsfield Hotel Holdings, LLC are Ariel Holdings LLC a Delaware Limited Liability Company whose members are Robert Danial, Mojdeh Khaghan, Joshua Danial, Ethan Danial and Zachary Danial. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Joshua Danial is domiciled in New York. Ethan Danial is domiciled in Puerto Rico. Zachary Danial is domiciled in Puerto Rico. The next member of Pittsfield Hotel Holdings LLC is Rolen Sabet who is domiciled in New York. The next member is Joseph Sabet who is domiciled in Israel. The next member is Michael Sabet who is domiciled in the State of Florida. The next member of Pittsfield Hotel Holdings, LLC is JEZ Holdings, LLC a Delaware Limited Liability LLC, whose members are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. The next member of Pittsfield Hotel Holdings, LLC is Robbi Holdings, LLC, a Delaware Limited Liability LLC

whose members are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. The last member of Pittsfield Hotel Holdings, LLC, is Pittsfield Residential II, LLC, an Illinois Limited Liability Company. The members of Pittsfield Residential II, LLC are RAD Mortgage Fund 2010 LLC, Michael Sabet, Joseph Sabet, Rolen Sabet, JEZ Holdings, LLC and Robbi Holdings, LLC. The only member of RAD Mortgage Fund 2010 LLC is Ariel Holdings, LLC whose members are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Michael Sabet is domiciled in Florida. Joseph Sabet is domiciled in New York. Rolen Sabet is domiciled in Israel. The members of JEZ Holdings LLC a Delaware Limited Liability Company are Robert Danial, Mojdeh Khaghan, Joshua Danial, Ethan Danial and Zachary Danial. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Joshua Danial is domiciled in New York. Ethan Danial is domiciled in Puerto Rico. Zachary Danial is domiciled in Puerto Rico. The members of Robbi Holdings, LLC are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida.

    3.    Residential is an Illinois limited liability company that maintains its principal place of business in Miami Beach, Florida. The members of Pittsfield Residential II, LLC are RAD Mortgage Fund 2010 LLC, Michael Sabet, Joseph Sabet, Rolen Sabet, JEZ Holdings, LLC and Robbi Holdings, LLC. The only member of RAD Mortgage Fund 2010 LLC is Ariel Holdings, LLC whose members are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Michael Sabet is domiciled in Florida. Joseph Sabet is domiciled in New York. Rolen Sabet is domiciled in Israel. The members of JEZ Holdings LLC a Delaware Limited Liability Company are Robert Danial, Mojdeh Khaghan, Joshua Danial, Ethan Danial and Zachary Danial. Robert

Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida. Joshua Danial is domiciled in New York. Ethan Danial is domiciled in Puerto Rico. Zachary Danial is domiciled in Puerto Rico. The members of Robbi Holdings, LLC are Robert Danial and Mojdeh Khaghan. Robert Danial is domiciled in Puerto Rico. Mojdeh Khaghan is domiciled in Florida.

4. Lynd, is an individual, who, at all times material herein, has been a citizen of San Antonio, Texas.

5. All complained of acts herein took place in the Northern District of Illinois.

6. This court has personal jurisdiction over Lynd under the provisions of ILCS 5/2-2-9 as Lynd has been transacting business in the Northern District of Illinois, Lynd committed the complained of tortious acts in the Northern District of Illinois, and this cause involves real property located within the Northern District of Illinois.

7. This court has original jurisdiction over these proceedings under the provisions of 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00 and there is complete diversity as this dispute is between citizens of different states. All plaintiffs maintain their principal place of business in Florida and the defendant is a citizen of Texas.

8. Venue properly lies in this district under the provisions of 28 U.S.C. § 1391 because the Northern District of Illinois is where a substantial part of the events giving rise to the claim occurred, and the real property that is the subject of the action is situated in the Northern District of Illinois.

## General Allegations

### Background – the Pittsfield Building

9. The Pittsfield Building (the "Building") is an historic building purchased by Development on or about July 12, 2000 and has since been divided into four separately deeded subdivisions. At all complained of times, three of said subdivisions were owned by Plaintiffs.

10. At all material times herein, the Building was divided into several separately deeded subdivisions, with each owner of the respective subdivisions bound by obligations set forth in a Declaration of Covenants, Conditions, Restrictions and Easements.

11. Development owned and operated the ground floor and all basement and sub-basement levels of the Building along with the upper portion of the Building, consisting of portions of floor 22 and floors 23-40 (the "Tower").

12. Hotel was organized for the purpose of taking title to, constructing and operating a hotel on floors 2-9 of the Building. Hotel owned floors 2-9 of the Building.

13. Residential owned floors 10-12 of the Building. (Collectively, all of the real property owned by all of the Plaintiffs within the Building shall hereafter be referred to as the "Properties.")

14. Development, Hotel and Residential are related entities.

15. Floors 13-21 of the Building were sold to a third party, 55 E. Washington Development, LLC, an Illinois limited liability company ("55E"). At all material times herein, 55E used its portion of the Building primarily as a student housing facility on a contract basis with various colleges and universities.

## Zoning of the Building

16. When Development purchased the Building in 2000, the Building was zoned DX-16 Downtown Mixed Use District.

17. DX-16 Downtown Mixed Use zoning allowed for, and continues to allow for many various uses within the Properties. In particular, DX-16 Downtown Mixed Use zoning

5

permitted Plaintiffs to build, own and operate a hotel, and 27 additional residential units within the Building.

18. Given the landmark status of the Building and the striking views from the Tower portion of the Building, Plaintiffs planned to use the allotted 27 remaining residential units for the Tower portion of its Properties for the development of spectacular units by either Development or a third party buyer.

19. Indeed, by letter dated May 1, 2014, the City of Chicago's Department of Planning and Development advised Plaintiffs' architect that a 210 room hotel "is a permitted use in the DX-16 district and therefore would be allowed to establish as a matter by-right."

20. Prior to May 1, 2014, the Properties were occupied by numerous income generating tenants.

21. Plaintiffs, in reliance upon the DX-16 Downtown Mixed Use zoning in place for the Properties, as confirmed in the May 1, 2014 correspondence from the City, arranged to empty the Properties of remaining tenants occupying all but floors 10-12 of the Properties along with certain tenants occupying retail space on the ground floor. This was done with the intent of converting floors 2-9 in the Building to a hotel, and the Tower portion of the Building, owned by Development, into spectacular city residential dwelling units, all permitted under said zoning.

22. On December 10, 2015, the City issued a building permit (the "Permit") to Hotel to construct a hotel with up to 191 units on Floors 2 through 9 of the Building. A true and correct copy of the Permit is attached as Exhibit "A."

**Purchase and Sale Contract Followed by Downzoning**

23. At all times material herein, defendant Lynd owned and controlled a single purpose entity known as Adam David Partners I, LLC ("Partners"). Partners was organized by Lynd to acquire the Properties from Plaintiffs.

6

24. On or about August 3, 2015, the Plaintiffs entered into a contract ("Sales Contract") to sell all of the Properties to Partners. Lynd expressed his interest in converting the building to a wholly residential use. The parties to the contract being Plaintiffs and Partners ultimately failed to close on said Sales Contract. A true and correct of the Sales Contract is attached as Exhibit "B".

25. The sales price for the Properties in the Sales Contract is $36,000,000.00. As such, said sales price set a minimum value for the Properties as of such date with DX-16 Downtown Mixed Use zoning in place, with such value to increase significantly upon approval and construction of a hotel and residential units in the Tower.

26. The Plaintiffs and Partners amended the Sales Contract, and gave Partners until November 10, 2015 to close on the sale. However, Partners breached the Sales Contract and defaulted thereunder by failing to close, and thus forfeited its $500,000 Earnest Money Deposit to the Plaintiffs.

27. Notwithstanding the fact Partners lost its rights as Purchaser under the Sales Contract, Defendant Lynd nevertheless still desired to acquire the Properties on his own behalf.

28. Defendant Lynd also arranged to have Partners file a frivolous five count complaint against Plaintiffs in Cook County Circuit Court in the case docketed as no. 2015-CH-17030 on or about November 20, 2015. This case alleged causes of action for fraud and fraud related claims along with a request for reformation of the Sales Contract. Four of the counts were dismissed against Partners with prejudice. Thereafter, Partners voluntarily dismissed the remaining two counts.

29. Defendant Lynd engaged in a scheme to have the Properties downzoned so that a hotel could no longer be developed on floors 2-9 of the Building and the amount of residential units allowed within the Building would be reduced to effectively make the Properties worthless

7

in the hands of Plaintiffs. This was all done with the intent to acquire the Properties at a price significantly lower than the purchase price of $36,000,000 in the Sales Contract and to retaliate against Plaintiffs for Partners loss of its $500,000 earnest money.

30. During this time period, Defendant Lynd concocted a plan to have Alderman Reilly arrange to have the Building downzoned so that, *inter alia*, a hotel could not be developed.

31. In furtherance of this scheme, on or about December 22, 2015 Defendant Lynd, through his company the Lynd Company, made a $1500 campaign contribution to Alderman Reilly. See Illinois Sunshine record detail attached as Exhibit "C."

32. To further help facilitate this plan, Defendant Lynd engaged counsel to represent him with regard to the referenced zoning change. In email correspondence dated December 28, 2015, Defendant Lynd's attorney wrote back to him setting forth detailed information on the parameters of the downzoning for the Building that Defendant Lynd sought, including stopping development of a hotel for which a permit already issued. See copy of email correspondence attached hereto as Exhibit "D."

33. Shortly thereafter, Alderman Reilly publicly expressed that he would oppose a hotel at the property and followed by sponsoring legislation in the City of Chicago City Council to change zoning of the Building from DX-16 Downtown Mixed Use to DR-10- Downtown Residential Use District (the "Zoning Change").

34. DR-10- Downtown Residential Use District zoning is a significant downgrade from DX-16 Downtown Mixed Use zoning as DR-10- Downtown Residential Use District zoning allows for significantly less residential units in the Building than already exist within the Building. This means, *inter alia*, that no residential units could any longer be constructed in the Tower. No hotel is would any longer be permitted under such zoning, and the Permit which

authorized Plaintiffs to construct a hotel on the Properties was effectively revoked. In other words, this effectively required, and continues to require the Properties (other than floors 10-12 and certain retail space on the ground floor) to sit empty.

35. Shortly before the Downzoning Ordinance was approved by City Council, Alderman Reilly wrote to Daniel Solis, Chairman of the Committee on Zoning, Landmarks and Building Standards via correspondence dated March 9, 2016. In the letter, the Alderman incredulously states that he arranged to "temporarily downzone" the Building and throw it into "nonperformance" for "its own protection." A copy of the March 9, 2016 letter is attached as Exhibit "E."

36. The referenced Zoning Change was approved by Ordinance O2016-811 of the City of Chicago (the "Downzoning Ordinance"), which Downzoning Ordinance was introduced on February 10, 2016 and passed on or about March 16, 2016. A true and correct copy of the Downzoning Ordinance is attached as Exhibit "F."

37. The Zoning Change enacted by the Downzoning Ordinance only affects the Building and does not affect any surrounding properties.

38. The Plaintiffs engaged a broker to sell the Properties at an auction to be held on February 28, 2017 and March 1, 2017.

39. Several prospective buyers who were willing and able to purchase the Properties at the referenced auction, and who would have submitted offers if the Downzoning Ordinance had not been enacted, advised Plaintiffs' representatives that they would not present offers for same for the reason that the Zoning Change would unreasonably restrict use of the referenced Properties.

40. Plaintiffs were unable to sell the Properties at the referenced auction because of the Zoning Change.

41. The subject Downzoning Ordinance that codified the Zoning Change effectively served to deny Plaintiff's all viable economic uses of the Properties. Indeed, at this stage, because of said Zoning Change, the Properties had become a burdensome liability to Plaintiffs and their members.

42. Unable to sustain itself as a via going concern following the Zoning Change, Development filed for Chapter 11 bankruptcy protection with the United States Bankruptcy Court in the Northern District of Illinois on March 26, 2017 in the case docketed as no. 17-09513 (the "Development Bankruptcy").

43. Shortly following the filing of the Development Bankruptcy, the presiding bankruptcy court issued an order authorizing an auction of the Properties.

44. At an auction held on June 26, 2017, the highest bid for the Properties was $20,800,000.00.

45. The sale of the Properties closed on August 25, 2017.

46. Plaintiffs have had to retain attorneys to represent them in the bankruptcy proceedings and to pay said attorneys a reasonable fee.

## COUNT I
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS

47. Plaintiffs reallege and incorporate paragraphs 1 through 46 of this complaint as and for its paragraph 47 of this Count I as though fully set forth herein.

48. At all times material herein, Plaintiffs enjoyed prospective contractual relationships with prospective purchasers for the Properties.

49. At all times material herein, Defendant Lynd had personal knowledge that the Properties were zoned DX-16 Downtown Mixed Use zoning.

50. Defendant Lynd, with the intent to interfere with Plaintiff's prospective contractual relationships with prospective purchasers for the Properties affirmatively took steps to induce Chicago City Council to enact the Downzoning Ordinance so as to enable him to acquire the Properties for a price substantially lower than the price set forth in the Sales Contract and Defendant Lynd caused Partners to file frivolous law suit against Plaintiffs in the Circuit Court of Cook County of which four counts were dismissed with prejudice and two counts were voluntarily dismissed.

51. Defendant Lynd's complained of interference were malicious acts performed in part in retaliation for Partners' loss of its $500,000 security deposit under the Sales Contract and was done with the intent to injure Plaintiffs.

52. Defendant Lynd was without justification to interfere with Plaintiffs prospective contractual relationships with prospective purchasers for the Properties as set forth herein.

53. Defendant Lynd personally induced action on the part of the Chicago City Council to enact the Downzoning Ordinance thereby interfering with Plaintiff's prospective contractual relationships with prospective purchasers for the Properties.

54. Plaintiffs have suffered damages as a result of said complained of interference in a sum exceeding $16,000,000.00.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Lynd, an award of attorneys' fees and costs, and such other relief that the Court deems equitable and just.

## COUNT II
## ABUSE OF PROCESS

55. Plaintiffs reallege and incorporate paragraphs 1 through 46 of this complaint as and for its paragraph 55 of this Count II as though fully set forth herein.

56. Defendant Lynd affirmatively took steps to induce Chicago City Council to enact the Downzoning Ordinance.

57. Defendant Lynd's purpose in inducing the Chicago City Council to enact the Downzoning Ordinance was intentionally done so as to enable him to acquire the Properties for a price substantially lower than the price set forth in the Sales Contract and to retaliate.

58. This was an improper purpose for having the Properties down-zoned.

59. The Properties never would have been down-zoned without the complained of actions of Defendant Lynd.

60. Plaintiffs suffered damages as a result of Defendant Lynd's complained of actions in a sum exceeding $16,000,000.00.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Lynd, an award of attorneys' fees and costs, and such other relief that the Court deems equitable and just.

## COUNT III
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

61. Plaintiffs reallege and incorporate paragraphs 1 through 46 of this complaint as and for its paragraph 61 of this Count III as though fully set forth herein.

62. At all times material herein, Plaintiffs had certain business expectancies associated with owning real properties zoned DX-16 Downtown Mixed Use zoning.

63. At all times material herein, Defendant Lynd had personal knowledge that the Properties were zoned DX-16 Downtown Mixed Use zoning.

64. Defendant Lynd, with the intent to interfere with Plaintiff's enjoyment of its property rights and business expectancies associated with owning properties zoned DX-16 Downtown Mixed Use zoning affirmatively took steps to induce Chicago City Council to enact

the Downzoning Ordinance so as to enable him to acquire the Properties for a price substantially lower than the price set forth in the Sales Contract.

65. Defendant Lynd's complained of interference was malicious act performed in part in retaliation for Partners' loss of its $500,000 security deposit under the Sales Contract and was done with the intent to injure Plaintiffs.

66. Defendant Lynd was without justification to interfere with Plaintiffs business expectancies as set forth herein.

67. Defendant Lynd personally induced action on the part of the Chicago City Council to enact the Downzoning Ordinance thereby interfering with Plaintiff's business expectancies.

68. Plaintiffs have suffered damages as a result of said complained of interference in a sum exceeding 16,000,000.00.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Lynd, an award of attorneys' fees and costs, and such other relief that the Court deems equitable and just.

Plaintiffs demand trial by jury.

                         Pittsfield Residential II, LLC,
                         Pittsfield Hotel Holdings, LLC and
                         Pittsfield Development, LLC

                         By: /s/ Christopher Bargione
                                  One of the Attorneys for Plaintiffs

Christopher Bargione (#6185177)
Collins Bargione & Vuckovich
One North LaSalle Street, Suite 300
Chicago, Illinois 60602
312-372-7813
chris@cb-law.com

## **LOCAL RULE 3.2 DISCLOSURE**

      Pittsfield Development, LLC, an Illinois limited liability company, Pittsfield Residential II, LLC, an Illinois limited liability company and Pittsfield Hotel Holdings, LLC an Illinois liability company, do not have any publicly held affiliates.

                                              By:    <u>s/ Christopher Bargione</u>
                                                              Attorney for the Plaintiffs