**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Pittsfield Development, LLC; Pittsfield
Residential II, LLC; and Pittsfield Hotel
Holdings, LLC,

               Plaintiffs,

      v.

Adam David Lynd,

               Defendant.

No. 19-cv-01321
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Pittsfield Development, LLC (Development), Pittsfield Hotel Holdings, LLC (Hotel), and Pittsfield Residential II, LLC (Residential) (collectively, Plaintiffs) brought a three-count Complaint against the Defendant, Adam David Lynd (Lynd).[1] Lynd now moves to dismiss the Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6). R. 17, Mot. Dismiss.[2] For the reasons below, the Court grants the motion to dismiss without prejudice.

## Background

This dispute centers around the Pittsfield Building (the Building), a historic building purchased by Development in July 2000. R. 15, Am. Comp. ¶ 9. The Building

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.
[2]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

The court accepts as true the following well-plead allegations from Plaintiffs' complaint and attached exhibits and draws all reasonable inferences in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

is divided into four properties. *Id.* ¶ 11. Development owns and operates the ground floor, the basement and sub-basements, along with portions of floor 22 and floors 23–40 (the Tower). *Id.* Hotel, a limited liability company created to build and operate a hotel in the Building, owns floors 2–9. *Id.* ¶ 12 (collectively, all of the real property owned by the Plaintiffs are referred to as the Properties). Residential owns floors 10–12. *Id.* ¶ 13. Development, Hotel, and Residential are all related entities. *Id.* ¶ 14. A third party, 55 E. Washington Development, LLC, owns Floors 13–21 and uses them primarily for student housing. *Id.* ¶ 15.

At the time of purchase in 2000, the Building was zoned DX-16 Downtown Mixed Use District (DX-16). Am. Compl. ¶ 16. DX-16 zoning allowed Plaintiffs to implement their plan to build and operate a hotel on floors 2–9 and to add twenty-seven additional "spectacular" residential units within the Building's Tower. *Id.* ¶¶ 17–18, 34. In 2015, the City issued a building permit allowing construction of a hotel. *Id.* ¶ 22, Exh. A, Building Permit.

In August 2015, Plaintiffs entered into a contract to sell their properties in the Building for $36,000,000 to Adam David Partners I, LLC (Partners), which was owned by Lynd and organized for this purpose. Am. Compl. ¶¶ 23–25. Ultimately, the parties failed to close on the contract, and Partners forfeited a deposit to the Plaintiffs. *Id.* ¶¶ 24, 26. Subsequently, Partners filed a complaint against Plaintiffs in the Circuit Court of Cook County[3] and filed a *lis pendens* against the Properties, creating a cloud on title. *Id.* ¶ 28. The Circuit Court dismissed four counts of the

---

[3]*Adam David Partners 1 LLC v. Pittsfield Development LLC, et al.*, No. 15-CH-17030 (Cir. Ct. Cook County).

complaint with prejudice, and Partners voluntarily dismissed the remaining counts. *Id.* ¶ 28.

On December 22, 2015, Lynd's company (the Lynd Company) made a $1,500 campaign contribution to Alderman Reilly.[4] Am. Compl. ¶ 31. Three days later, on December 28, 2015, Lynd's attorney corresponded with Lynd regarding a possible zoning change, including whether there was "anything the Alderman can do to stop someone from converting floors 2–9 to a hotel." *Id.*, Exh. D at 2. Shortly afterwards, Alderman Reilly publicly expressed that he would oppose a hotel in the Building. *Id.* ¶ 33. Reilly sponsored Ordinance O2016-811, which only affected the Building and changed its zoning from DX-16 Downtown Mixed Use to DR-10 Downtown Residential Use District. *Id.* ¶¶ 33–34, 37.

Alderman Reilly wrote a letter to the Chairman of the Committee on Zoning, Landmarks and Building Structures in March 2016. Am. Compl. ¶ 35. Reilly explained that he "introduced this ordinance as a temporary measure to halt a building program that I believe is incompatible with this landmark structure … ." *Id.* Exh. E, Mar. 9, 2016 Letter at 2. He further elaborated that he "was alerted of the sale of the Pittsfield Building by potential buyers who sought [his] counsel on what uses [he] considered compatible … [He] saw an opportunity to assist new ownership with returning this structure to its previous strength … . Unfortunately, ownership chose not to meet with [him] even after potential buyers reported back to them that

---

[4]Plaintiffs do not allege that the Building is located in Alderman Reilly's ward; however, such information is a matter of public record and is not subject to reasonable dispute, so the Court will take judicial notice of that fact without converting the motion into one for summary judgment. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

[he] could not support hotel use … ." *Id.* at 2–3. Around a week later, the City of Chicago passed the Ordinance. Am. Compl. ¶ 36.

According to Plaintiffs, DR-10 zoning restricted the number of allowed residential units in the Building in a manner that prevented new construction. Am. Compl. ¶ 34. Additionally, DR-10 zoning prohibited hotel use, effectively revoking the hotel permit. *Id.* Plaintiffs allege that the Ordinance required much of their property interests in the Building to sit empty. *Id.* Plaintiffs engaged a broker to sell their interests in the Building at an auction held on February 28 and March 1, 2017. *Id.* ¶ 38. Plaintiffs allege that several buyers who were otherwise willing and able to make a purchase were uninterested because of the Ordinance's restrictions. *Id.* ¶ 39. Plaintiffs were thus unable to sell the Properties at auction. *Id.* ¶ 40.

In March 2017, Development filed for Chapter 11 bankruptcy protection. Am. Compl. ¶ 42. The bankruptcy court ordered a June 2017 auction of the Properties. *Id.* ¶¶ 43–44. The Properties sold for $20,800,000—the highest bid. *Id.* ¶¶ 44, 45. The sale of the properties closed on August 25, 2017. *Id.* ¶ 45.

In February 2019, Plaintiffs brought a three-count action against Lynd. R. 1. Plaintiffs subsequently filed an amended complaint. R. 15. Counts I and II assert Illinois common-law claims for "intentional interference with prospective contractual relationships" and "intentional interference with contractual relationship," respectively. Count III is an Illinois common-law claim for "willful and malicious injury to property."

Lynd, in turn moved to dismiss the Amended Complaint pursuant to Rule

12(b)(6), arguing that Plaintiffs' Complaint fails for three reasons: (1) Plaintiffs fail to state a claim for either intentional interference with contractual relations or intentional interference with contractual relations; (2) Plaintiffs cannot state a claim for willful and malicious injury to property because Illinois does not recognize any such cause of action; and (3) Development lacks standing to pursue any of its causes of action because any such causes of action are property of its Bankruptcy Estate.[5] The Court addresses each in turn.

## Legal Standard

To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court will accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). On the other hand, "[t]he complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

---

[5]Whether a party pursuing a claim is the real party in interest is not a jurisdictional question that may deprive this Court of subject matter jurisdiction over Plaintiffs' claims. *Bargo v. Porter Cty., Indiana*, 734 F. App'x 375, 377 (7th Cir. 2018) (collecting cases).

## Discussion

### I. Standing to Sue Due to Pending Bankruptcy Claims

First, the Court addresses whether Development has standing to pursue its claims considering its pending bankruptcy petition. Lynd argues that the claims in this case are the property of Development's bankruptcy estate, meaning that only the trustee of the estate has standing to pursue them.[6] Although "standing" is most often considered a jurisdictional issue, Federal Rule of Civil Procedure 17(a), which requires every action to be "prosecuted in the name of the real party in interest," is a "flexible rule[] for deciding when a case should not go forward" but does not limit the subject matter jurisdiction of federal courts. *Bargo*, 734 F. App'x at 377.

The Amended Complaint alleges the Building was downzoned on March 16, 2016 and Lynd's alleged tortious conduct occurred prior to the downzoning. R. 17-1, Mot. Dismiss Br. at 14 (citing Am. Compl. ¶¶ 29–32, 36). Development filed for Chapter 11 bankruptcy on March 26, 2017. *Id.* (citing Am. Compl. ¶ 42). Therefore, reasons Lynd, any claims predating Development's bankruptcy that it could have asserted now belong to the bankruptcy estate. *Id.* Plaintiffs' response fails to address Lynd's standing argument.

Under the Bankruptcy Code, the "estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.

---

[6]In his motion to dismiss, Lynd also argued that Development was judicially estopped from pursuing any claim against Lynd. R. 17-1, Mot. Dismiss Br. at 13–14. However, in his reply brief, Lynd concedes that this issue may be moot now that Development has listed the lawsuit in its Amended Statement of Financial Affairs in the bankruptcy proceeding. R. 20, Def.'s Reply at 9. The Court accordingly declines to address this argument.

§ 541(a)(1), as well as "[a]ny interest in property that the estate acquires after the commencement of the case," *id.* § 541(a)(7). Lynd is right that if these claims belong to the estate, the trustee is the real party in interest. *See Matthews v. Potter*, 316 F. App'x 518, 521 (7th Cir. 2009) ("The trustee may abandon a legal claim, but until then only the trustee, as the real party in interest, has standing to sue."); *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (noting the threshold issue of whether the plaintiff is the "real party in interest," rather than "an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy"). However, Development has filed for Chapter 11 reorganization. Am. Compl. ¶¶ 42, 46–47. In a Chapter 11 case, unless a trustee is appointed, the debtor becomes a "debtor-in-possession." 11 U.S.C. § 1101(1). Debtors in possession in Chapter 11 cases possess the powers of a trustee. *Id.* § 1107(a). If Development is a debtor-in-possession in its Chapter 11 case, it has standing to bring these claims, even if they belong to the bankruptcy estate. *See Long v. One W. Bank, FSB*, 2011 WL 3796887, at \*2 (N.D. Ill. Aug. 24, 2011).

On the face of the pleadings, it is not apparent that a trustee has been appointed in Development's bankruptcy case. Plaintiffs allege that the claimants that still await distributions under the confirmed reorganization plan "stand to receive distributions if Plaintiffs prevail." Am. Compl. ¶ 47. In his motion to dismiss, Lynd does not argue or provide any reason to believe that Development is not a debtor-in-possession. *See Long*, 2011 WL 3796887, at \*2. Drawing all reasonable inferences in Plaintiffs' favor, Development has standing to bring this action.

## II.    Rule 9(b)

Before reaching the merits of the claims, as a threshold issue, Lynd argues that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to Plaintiffs' tortious interference claims (Counts I and II). Mot. Dismiss Br. at 5–6. The Court disagrees.

Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of an asserted fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted). Rule 9(b) applies not only to claims of fraud, but also to those "that sound in fraud," meaning those premised on a course of fraudulent conduct. *Id.* Therefore, if a claim for tortious interference with prospective advantage or tortious interference with contract are premised upon a course of fraudulent conduct, they will implicate Rule 9(b)'s heightened pleading requirement. *Id.*

A review of Plaintiffs' claim for tortious interference with prospective advantage and tortious interference with contract reveals that neither claim is premised on fraudulent conduct, unlike the conduct of the defendants in the cases relied upon by Lynd. *Compare* Am. Compl. ¶¶ 49–75 (tortious interference claims based on Lynd's correspondence with Alderman Reilly and Chicago City Council to enact Downsizing Ordinance, which interfered with Plaintiffs' ability to work with third parties to develop residential units and develop, lease, and operate a hotel); *with Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 924 (N.D. Ill. 2018) (tortious interference claim based upon defendants' "scheme to siphon money from

8

plaintiff-company into other entities owned and operated by Defendants");

*LoggerHead Tools, LLC v. Sears Holding Corp.*, 2013 WL 1858590, at *6 (N.D. Ill.

May 1, 2013) (tortious interference claim based on the same conduct as plaintiff's

fraud claim). Indeed, Lynd does not point to any allegations in either Count that

suggest that said Count is based on a course of fraudulent conduct. As such, Rule

9(b)'s heightened pleading requirement is not implicated in this case.

The Court now turns to Lynd's contention that Plaintiffs fail to state claims for

tortious interference with prospective contractual relationships and intentional

interference with contractual relationship.

### III.   Intentional Interference with Prospective Contractual Relationships (Count I)

Turning to the merits, in Count I, Plaintiffs assert an Illinois common-law

claim for "intentional interference with prospective contractual relationships," also

known as tortious interference with prospective economic advantage. In Illinois, the

elements of a tortious interference with prospective economic advantage claim consist

of the following: "(1) a reasonable expectancy of entering into a valid business

relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and

unjustified interference by the defendant that induced or caused a breach or

termination of the expectancy, and (4) damages to the plaintiff resulting from the

defendant's interference." *Foster v. Principal Life Ins. Co.,* 806 F.3d 967, 971 (7th Cir.

2015) (*citing Voyles v. Sandia Mortgage Co.,* 751 N.E.2d 1126, 256 (Ill. 2001)).

Starting with the first element, Lynd argues that Plaintiffs' allegations do not

plausibly suggest a "reasonable expectation" of entering any valid business

relationships with any third party. Lynd observes that while the Amended Complaint identifies certain third parties with whom Plaintiffs claim to have expected to enter into a valid business relationship, it lacks any facts supporting this allegation. Lynd submits that at best, Plaintiffs have alleged a mere "hope" or "subjective belief" about a possible business relationship, which is insufficient under Illinois law. R. 17-1, Mot. Dismiss Br. at 6 (citing *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1300 (Ill. 1996)).

Moreover, Lynd asserts that the Amended Complaint fails to allege sufficient facts identifying a third party at whom Lynd's alleged conduct was directed, as required under Illinois law. Instead, Plaintiffs merely state that Lynd took steps to induce Alderman Reilly and the Chicago City Council to enact the Downsizing Ordinance and that Lynd caused Partners to file a frivolous lawsuit against the Plaintiffs and a *lis pendens* against the Properties. These allegations, insists Lynd, are insufficient to state a claim for tortious interference with prospective business relations. Lynd relies on *LoggerHead Tools, LLC v. Sears Holding Corp.*, 2013 WL 1858590 (N.D. Ill. May 1, 2013), as the complaint in that case also failed to identify any third parties to establish a business relationship and was devoid of any allegations that the defendant directed any acts to a third party with whom the plaintiff could reasonably expect to enter into a business relationship. The court dismissed the plaintiff's complaint for failure to satisfy Rule 9(b)'s pleading requirements, which, as Plaintiffs argue in response, is a more stringent pleading standard than required here. R. 18, Pls.' Resp. at 8–9.

Lastly, Lynd argues that the conduct must not only be directed at any third

10

party, but rather, must be directed toward some third party with whom plaintiff expected to do business. Mot. Dismiss Br. at 7 (citing *Faith Freight Forwarding Corp., v. Ruiz*, 1997 WL 159207, at *6 (N.D. Ill. Mar. 24, 1997)). Plaintiffs counter that the Amended Complaint does, in fact, allege interference by Lynd with third parties. Plaintiffs surmise that Lynd had no reason to ask the Alderman to have the Building downzoned other than to prevent development of a hotel—a development that would have required Plaintiffs to have business relationships and contracts with third parties. Plaintiffs also argue that the Amended Complaint alleges negotiations for the sale of the Properties, a transaction that Lynd tried to prevent. A sale, posit Plaintiffs, necessarily would have involved a third-party buyer. Plaintiffs maintain that these are reasonable inferences that they are entitled to at the pleading stage. Pls.' Resp. at 6, 8–9 (citing *Scholwin v. Johnson*, 498 N.E.2d 249 (Ill. App. Ct. 1986)).

The Court finds that Plaintiffs fail to adequately allege a reasonable expectation of entering into a valid business relationship with any third party. True, Plaintiffs list a variety of third-party purchasers and hotel operators and lessees in their Amended Complaint. Plaintiffs further allege that at "all times material herein," they "enjoyed prospective contractual relationships" with third parties that "included, but were not limited to" the listed entities. Am. Compl. ¶¶ 51–52. Plaintiffs' allegations, however, are conclusory. Plaintiffs do not allege any facts about the state of their negotiations with these companies. Were Plaintiffs and a third party merely engaged in exploratory negotiations? Had Plaintiffs and a third party exchanged proposals? This is not to suggest that Plaintiffs must have been parties to a contract

11

with a third party to state a claim for tortious interference with prospective economic advantage. "If that were the case, this tort would be indistinguishable from tortious interference with contract," a distinct cause of action. *Installation Services v. Elecs. Research, Inc.*, 2005 WL 3180129, at \*17 (N.D. Ill. Nov. 23, 2005). However, a "reasonable expectation" requires more than the "hope or opportunity of a future business relationship." *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007) (citing *Anderson*, 667 N.E.2d at 1300). This, however, is not the only shortcoming in Plaintiffs' Complaint.

In Illinois, "[a]ctions that form the basis of a tortious interference claim must be directed at third-party business prospects." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) (citing *Galinski v. Kessler*, 480 N.E.2d 1176, 1180 (Ill. App. Ct. 1985)); *see also Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005) ("A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party."). Lynd brought his allegedly frivolous lawsuit in Cook County against the Plaintiffs, not third parties. And while Alderman Reilly may be a third party with respect to this suit, Plaintiffs were not in a prospective contractual relationship with him. The Amended Complaint does not suggest that Lynd took action directed towards third party business partners, and this is fatal to their claim. Plaintiffs do allege that "all of these complained of acts were directed to, among others, the Third Parties." Am. Compl. ¶ 55. However, "[t]he complaint must do more than recite the elements of a cause of

12

action in a conclusory fashion" to survive a motion to dismiss. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

The Court finds that in viewing the well-plead allegations of the Amended Complaint in Plaintiffs' favor and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs fail to state a claim for tortious interference with prospective contractual relationships. Therefore, Count I is dismissed.

## IV.    Intentional Interference with Contractual Relationship (Count II)

In Count II, Plaintiffs assert an Illinois common-law claim for "intentional interference with contractual relationship." This claim revolves around an agreement Plaintiffs allegedly had with Chicago Hotel Partners (CHP), a hotel operator. Am. Compl. ¶ 63. Under this agreement, CHP would purchase an interest in the Hotel, manage and oversee the development of the Hotel Property, and negotiate a lease and operations agreement with a hotelier. *Id.* ¶ 65. Plaintiffs allege that Lynd's filing of a frivolous lawsuit against Plaintiffs and his inducement of Reilly and the City Council to downzone the Building interfered with this contractual relationship. *Id.* ¶¶ 69, 72.

To state a claim for tortious interference with contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff. *Webb v. Frawley,* 960 F.3d 569, 577

13

(7th Cir. 2018), *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989).

Lynd argues that Plaintiffs fail to allege facts to plausibly demonstrate the elements of a tortious interference with contractual relations, as Plaintiffs fail to allege that Lynd: (1) caused CHP to breach its contract with Plaintiffs, and (2) directed any acts at CHP that could have caused the alleged breach. Mot. Dismiss Br. at 11 (citing *Grund v. Donegan*, 700 N.E.2d 157, 160 (Ill. App. Ct. 1998) (holding that plaintiff "wholly fail[ed] to state a cause of action for tortious interference with contract" where no breach of contract was alleged)). Plaintiffs counter that they have alleged that Lynd's alleged malicious interference—in the form of a "frivolous lawsuit" and inducing Alderman Reilly and the Chicago City Council to enact the downzoning ordinance—prevented CHP from performing its allegations under its contract with Plaintiffs, which suffices to state a cause of action. Pls.' Resp. at 9–10 (citing *Scholwin v. Johnson*, 498 N.E. 2d 249 (Ill. App. Ct. 1986)). As with the first count, Lynd again has the better argument, and Plaintiffs fail to state a cause of action.

The Court agrees with Plaintiffs, however, that the Amended Complaint adequately alleges a breach of contract to satisfy that element of the tort. Plaintiffs allege that CHP was obligated under its contract with Plaintiffs to "purchase an interest in Hotel and to be Hotel's company manager to oversee all aspects of the development of a hotel … and negotiations of a lease and operations agreement with a hotelier … ." Am. Compl. ¶ 65. Because of Lynd's alleged misconduct—discussed

14

below—the Building was downzoned, and no hotel was built. *Id.* ¶ 34. Without a hotel

or the requisite permit to develop one, CHP was unable to perform its obligations. *Id.*

¶¶ 73–74. True, Plaintiffs do state the words, "CHP breached the contract." But

alleging CHP's inability to perform its obligations under its contract with Plaintiffs—

not merely that the obligations became more burdensome—is enough. *See Havoco of*

*Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1344 (7th Cir. 1992) ("[U]nder

Illinois law, the breach element of tortious interference requires … *rendering*

*performance impossible*[.]") (internal citation omitted) (emphasis in original); *see also*

*Triple Canopy, Inc. v. Moore*, 2005 WL 1629768, at *7 (N.D. Ill. July 1, 2005)

("Allegation of an actionable breach is not a prerequisite to an interference with

contract claim under Illinois law," but plaintiff must allege that performance is

impossible, not merely more expensive of burdensome).

   But Plaintiffs' tortious interference with contract claim is still doomed, as

Plaintiffs fail to sufficiently allege that Lynd's conduct constituted unjustifiable

inducement of a breach. First, under Illinois law, "the only cause of action recognized

for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of

process." *Havoco*, 702 F.2d at 647 (citing *Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill.

App. Ct. 1978)). Plaintiffs may not base tortious interference claims on the "wrongful

filing of a lawsuit." *Id.* Thus, Lynd's allegedly frivolous lawsuit does not support

Plaintiffs' tortious interference claims. *See also Shield Techs. Corp. v. Paradigm*

*Positioning, LLC*, 2012 WL 4120440, at *4 (N.D. Ill. Sept. 19, 2012) (noting that "it is

clear that the principle discussed in *Havoco* applies whether the alleged interference

involves an existing contract or a prospective business relationship"); *UTStarcom, Inc. v. Starent Networks Corp.*, 2008 WL 5142194, *2 (N.D. Ill. Dec. 5, 2008) (citing *Havoco* and dismissing a tortious interference claim to the extent it was based on the filing of a lawsuit). Plaintiffs' tortious interference claims fail insofar as they rely on Lynd's allegedly frivolous lawsuit.

The only remaining allegation relating to Lynd's inducement to breach is Lynd's "scheme" to downzone the Building. Here, Plaintiffs' vague allegations are insufficient. "Establishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.*" In re Estate of Albergo*, 656 N.E.2d 97, 103 (Ill. App. Ct. 1995) (internal citations and quotations omitted). Plaintiffs allege that Lynd "concocted a plan to have Alderman Reilly arrange for the downzoning of their building" but do not allege what that plan was. Am. Compl. ¶ 8. Instead, they note that Lynd donated $1,500 to Reilly through the Lynd Company, and that Lynd's attorney corresponded with Lynd about possible action from Alderman Reilly about the Building's zoning. *Id.* ¶¶ 31–32. Plaintiffs do not specify whether Lynd actively persuaded Alderman Reilly to take action to downzone the Building. *See Estate of Albergo*, 656 N.E.2d at 103. Alderman Reilly's letter in support of the ordinance simply states that "potential buyers . . . sought my counsel on what uses I considered compatible." Mar. 9, 2016 Letter at 2. Where the court is unable "to infer more than the mere possibility of misconduct," the complaint has failed to show that "the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (2009)

16

(citing Fed. Rule Civ. Proc. 8(a)(2)). Plaintiffs therefore fail to sufficiently allege that Lynd actively induced Reilly or the Chicago City Council to downzone the Building.

For all the above reasons, Plaintiffs' claim for intentional interference with contractual relationship (Count II) is dismissed.

### V. Willful and Malicious Injury to Property (Count III)

In Count III, Plaintiffs purport to assert a cause of action for willful and malicious injury to property. Plaintiffs allege that Lynd had personal knowledge that the properties were zoned DX-16 Downtown Mixed Use and took affirmative steps to induce Alderman Reilly and the Chicago City Council to enact a downzoning ordinance so as to enable Lynd to acquire the Properties at a price substantially lower than the contract price. Am. Compl. ¶¶ 77–78. Plaintiffs maintain that the downzoning ordinance caused injury to the Properties.

Lynd argues that Plaintiffs' claim for "willful and malicious injury to property," is not a recognized cause of action in Illinois. Mot. Dismiss Br. at 12 (citing *Shields Enterprises, Inc. v. First Chicago Corp.*, 1987 WL 18356, at *3 (N.D. Ill. Oct. 7, 1987); *Pelfresne v. Vill. of Lindenhurst,* 2005 WL 2322228, at *15 (N.D. Il. Sept. 16, 2005)). Plaintiffs, not surprisingly, insist that Illinois does in fact recognize a cause of action for willful and malicious injury to property. Pls.' Resp. at 11–12 (citing *Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990); *John Deere Co. v. Metzler*, 201 N.E.2d 478 (Ill. App. Ct. 1964)). In fact, Plaintiffs note that one of the cases cited by Lynd, *Pelfresne,* 2005 WL 2322228, at *15, implicitly recognizes the tort of willful and malicious injury to property.

17

As illustrated by the parties' arguments, whether Illinois law recognizes the cause of action of willful and malicious injury to property is open to debate. Several courts have called into question the existence of such a cause of action. In *Shields*, the court dismissed plaintiff's malicious injury to property claim, explaining that "this Court cannot say with any certainty that the Illinois Supreme Court would find that a cause of action existed here based upon an unclear 1956 federal district court case and on dicta expounded in 1898." 1987 WL 18356, at *4. The court observed that "one must go back over thirty years to find even the briefest mention of the issue in Illinois … ." *Id.* Similarly, the court in *Pelfresne* was also dubious as the existence of such a cause of action. In any event, the court found that even if such a cause of action existed, there was nothing to suggest in that case that the defendants committed a civil wrong necessary to support the claim. 2005 WL 2322228, at *16.

On the other hand, in *Easter House*, the Seventh Circuit noted that under Illinois law, "a business may bring an action for the tort of malicious and wrongful impairment of property if it is based upon a civil wrong." 910 F.2d at 1405 (citing *Nemanich v. Long Grove Country Club Estates, Inc.*, 255 N.E.2d 466, 469 (Ill. App. Ct. 1970)). In *Nemanich*, the court affirmed dismissal of claims because "[t]he tort of malicious and wrongful impairment of property, like any other tort, must be based on the commission of a civil wrong … their alleged motives are irrelevant." 255 N.E.2d at 469. Similarly, in *John Deere*, the court evaluated a claim for malicious and intentional injury to business. The court stated the principle that tortious acts consisting of "a design and purpose to intentionally do a wrongful harm and injury

18

resulting in fact in an injury" are actionable, but ultimately held that the plaintiff had not committed a "legal wrong," regardless of his motives. *John Deere*, 201 N.E.2d at 487. Accordingly, even if there exists a distinct cause of action for "willful and malicious injury to property" in Illinois, Plaintiffs must allege that Lynd harmed their property interests through an unlawful action.

The Court need not wade into the debate, as Plaintiffs fail to allege that Lynd committed a civil wrong, as they must to support this claim. The only civil wrongs Plaintiffs allege are the frivolous lawsuit and the dealings with Alderman Reilly. Am. Compl. ¶¶ 78, 80. As explained above, Plaintiffs have not plausibly alleged that Lynd committed any independent civil wrongs in connection with these events.

Since Plaintiffs have not alleged any civil wrongs that could support this claim, Plaintiffs' claim for willful and malicious injury to property (Count III) is also dismissed.

### Conclusion

For the reasons given above, the Court grants the motion to dismiss. Plaintiffs' claims are dismissed without prejudice. If Plaintiffs wish to file an amended complaint consistent with this Opinion, they must do so by December 4, 2020.

Franklin U. Valderrama
United States District Judge

DATED: November 13, 2020

19