**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Pittsfield Development, LLC; Pittsfield Residential II, LLC; and Pittsfield Hotel Holdings, LLC, | |
| Plaintiffs, | No. 19-cv-01321 |
| v. | Judge Franklin U. Valderrama |
| Adam David Lynd, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Pittsfield Development, LLC (Development), Pittsfield Hotel Holdings, LLC (Hotel), and Pittsfield Residential II, LLC (Residential) (collectively, Plaintiffs) brought a six-count Second Amended Complaint (SAC) against Defendant Adam David Lynd (Lynd). Lynd now moves to dismiss Plaintiffs' SAC under Federal Rule of Civil Procedure 12(b)(6). R. 40, Mot. Dismiss.[1] For the reasons below, the Court grants the Motion to Dismiss with prejudice.

**Background**

This dispute centers around the Pittsfield Building (the Building), a historic building purchased by Development in July 2000.[2] R. 37, SAC ¶ 9. The Building is divided into four properties. *Id.* Development owns and operates the ground floor, the

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all the well-pleaded facts in the SAC and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

basement, and sub-basements, along with portions of floor 22 and floors 23–40 (the Tower). *Id.* ¶ 11. Hotel, a limited liability company created to build and operate a hotel in the Building, owns floors 2–9. *Id.* ¶ 12 (collectively, all of the real property owned by the Plaintiffs are referred to as the Properties). Residential owns floors 10–12. *Id.* ¶ 13. Development, Hotel, and Residential are all related entities. *Id.* ¶ 14. A third party, 55 E. Washington Development, LLC, owns Floors 13–21 and uses them primarily for student housing. *Id.* ¶ 15.

At the time of purchase in 2000, the Building was zoned DX-16 Downtown Mixed-Use District (DX-16). SAC ¶ 16. DX-16 zoning allowed Plaintiffs to implement their plan to build and operate a hotel and to add twenty-seven additional "spectacular" residential units within the Building's Tower. *Id.* ¶¶ 17–18. In 2015, the City of Chicago (the City) issued a building permit allowing construction of a hotel on Floors 2–9. *Id.* ¶ 22; *id.*, Exh. A, Building Permit.

In August 2015, Plaintiffs entered into a contract to sell their Properties in the Building for $36,000,000 to Adam David Partners I, LLC (Partners), which was owned by Lynd and organized for this purpose. SAC ¶¶ 23–25. Ultimately, the parties failed to close on the contract, and Partners forfeited a deposit to the Plaintiffs. *Id.* ¶¶ 24, 26. Subsequently, on November 20 and 23, 2015, respectively, Partners filed a complaint against Plaintiffs in the Circuit Court of Cook County (the Cook County Lawsuit) and filed a *lis pendens* against the Properties, creating a cloud on title. *Id.* ¶¶ 29–30, 36; *id.*, Exh. C.

Plaintiffs claim that before Partners filed the Lawsuit and the *lis pendens*,

Plaintiffs, through third party CBRE, were engaged in negotiations with prospective buyers, including DeBartolo Development, LLC, Pramana Global, LLC, Brijus Capital, LLC, and Akara Partners, LLC (collectively, Prospective Buyers), to sell Plaintiffs' interest in the Properties in the event the transaction with Partners failed to close. SAC ¶¶ 63, 83, 103, 123. Lynd knew about Partners' negotiations with the Prospective Buyers. *Id.* ¶¶ 66, 86, 106, 126. The Prospective Buyers each expressed an intent to buy Plaintiffs' interest in the Properties via a written letter of intent, but the intent to purchase was conditioned upon Plaintiffs being able to deliver good, marketable and clear title to the Properties, title which was clouded by the filing of the *lis pendens*. *Id.* ¶¶ 67–68, 87–88, 107–08, 127. Plaintiffs claim that the filing of the Cook County Lawsuit and *lis pendens* caused the Prospective Buyers to cease negotiations to purchase Plaintiffs' interests in the Properties. *Id.* ¶¶ 73, 93, 113, 132.

On December 22, 2015, Lynd's company (the Lynd Company) made a $1,500 campaign contribution to Alderman Reilly. SAC ¶ 40. Three days later, on December 28, 2015, Lynd's attorney corresponded with Lynd regarding a possible zoning change, including whether there was "anything the Alderman can do to stop someone from converting floors 2–9 to a hotel." *Id.* ¶ 41; *id.*, Exh. E at 1. Shortly afterwards, Alderman Reilly publicly expressed that he would oppose a hotel in the Building. *Id.* ¶ 42. Reilly sponsored Ordinance O2016-811 (the Ordinance), which only affected the Building and changed its zoning from DX-16 Downtown Mixed Use to DR-10 Downtown Residential Use District. *Id.* ¶¶ 42–43, 45–46.

Alderman Reilly wrote a letter to the Chairman of the Committee on Zoning,

Landmarks and Building Structures in March 2016. SAC ¶ 44. Reilly explained that he "introduced this ordinance as a temporary measure to halt a building program that I believe is incompatible with this landmark structure . . . ." *Id.*; *id.*, Exh. F, Mar. 9, 2016 Letter at 1. He further elaborated that he "was alerted of the sale of the Pittsfield Building by potential buyers who sought [his] counsel on what uses [he] considered compatible . . . [He] saw an opportunity to assist new ownership with returning this structure to its previous strength . . . Unfortunately, ownership chose not to meet with [him] even after potential buyers reported back to them that [he] could not support hotel use . . . ." Mar. 9, 2016 Letter at 1–2. Around a week later, the City of Chicago passed the Ordinance. SAC ¶ 45.

According to Plaintiffs, DR-10 zoning restricted the number of allowed residential units in the Building in a manner that prevented new construction. SAC ¶ 43. Additionally, DR-10 zoning prohibited hotel use, effectively revoking the hotel permit. *Id.* Plaintiffs allege that the Ordinance required much of their property interests in the Building to sit empty. *Id.* Plaintiffs engaged a broker to sell their interests in the Building at an auction held on February 28 and March 1, 2017. *Id.* ¶ 47. Plaintiffs allege that several buyers who were otherwise willing and able to make a purchase, including the Prospective Buyers, were uninterested because of the Ordinance's restrictions. *Id.* ¶¶ 48, 76, 96, 116, 135. Plaintiffs were thus unable to sell the Properties at auction. *Id.* ¶ 49.

In March 2017, Development filed for Chapter 11 bankruptcy protection. SAC ¶ 51. The bankruptcy court ordered a June 2017 auction of the Properties. SAC

4

¶¶ 52–53. The Properties sold for $20,800,000—the highest bid. *Id.* ¶ 53. The sale of the properties closed on August 25, 2017. *Id.* ¶ 54.

In February 2019, Plaintiffs brought a three-count complaint against Lynd. R. 1, Compl. Plaintiffs subsequently filed an amended complaint. R. 15, Am. Compl. Lynd moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) (R. 17) which the Court granted (R. 35, 11/13/20 Order). The Court allowed Plaintiffs to file a second amended complaint.

Plaintiffs filed a Second Amended Complaint (SAC) asserting six counts against Lynd, including four counts of intentional interference with prospective economic advantage, one count of slander of title, and one count of malicious and wrongful impairment of property. The SAC alleges Lynd's filing of the "frivolous lawsuit and lis pendens" as well as the alleged "scheme to cause the Properties to be downzoned" as the basis for Plaintiffs' claims. *Id.* ¶¶ 28–46.

Lynd moved to dismiss the SAC. Mot. Dismiss; R. 41, Memo. Dismiss. Lynd argues that Plaintiffs' SAC fails for five reasons: (1) The SAC "is based on the same two conclusory allegations, which the Court has already deemed insufficient to maintain a cause of action"; (2) Plaintiffs have failed to properly allege the "essential elements" of an intentional interference with prospective economic advantage claim; (3) Plaintiffs' intentional interference claims are "barred by the applicable statute of limitations"; (4) Plaintiffs fail to "allege facts that establish . . . the essential elements" of a slander of title claim; and (5) Illinois does not recognize claims for willful and

malicious impairment of property. Memo. Dismiss at 2. The Court addresses each argument in turn.

## Standard of Review

To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court will accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). On the other hand, "[t]he complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

## Discussion

### I. Intentional Interference with Prospective Economic Advantage (Counts I–IV)[3]

In Counts I–IV, Plaintiffs assert the Illinois common law claim of intentional interference with prospective economic advantage.[4] To state a claim for intentional

---

[3]Counts I–IV of the SAC each claim of intentional interference of prospective economic advantage between Plaintiffs and each of the Prospective Buyers. The Court will address all four claims together as the parties have done in their briefing.

[4]Plaintiffs previously referred to this claim as "Intentional Interference With Prospective Contractual Relationships." Am. Comp. at 12.

interference with prospective economic advantage in Illinois, a plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.,* 806 F.3d 967, 971 (7th Cir. 2015) (quoting *Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126, 1133 (Ill. 2001)).

In support of dismissal, Lynd argues that Plaintiffs fail to state claims for intentional interference with prospective economic advantage, but even if Plaintiffs adequately plead those causes of action, the claims would nonetheless be time barred by the applicable statute of limitations." Memo. Dismiss at 6–10. Because the statute of limitations would be dispositive of these claims, the Court addresses it first.

### A. Statute of Limitations

Lynd posits that even if a claim for intentional interference with prospective economic advantage could be alleged, the claims in the SAC are time barred and do not properly relate back to Plaintiffs' earlier complaints under Federal Rule of Civil Procedure 15(c)(1)(B). Memo. Dismiss at 10. Lynd points out that Illinois has a five-year statute of limitation for tortious interference claims and Plaintiffs' claims arose out of the *lis pendens* filed in 2015. *Id.* Plaintiffs' original complaint was filed on February 22, 2019—less than five years after the filing of the *lis pendens*, but Lynd argues that the SAC's intentional interference claims are based on different facts than those supporting Plaintiffs' claims asserted in the original complaint. *Id.* at 10–

11; R. 49, Reply at 4–5. Plaintiffs do not dispute the five-year statute of limitations, but maintain that their claims of intentional interference with prospective economic advantage in the SAC are not time barred, based upon the relation back doctrine of Rule 15(c)(1)(B). R. 47, Resp. at 9–10.

Rule 15(c)(1)(B) allows an amendment to a pleading to relate back "to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "Rule 15(c) is liberally construed to 'effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems.'" *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 733 (N.D. Ill. 2014) (quoting *Staren v. Am. Nat'l Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976)). To that end, an amended complaint that "merely adds legal conclusions or changes the theory of recovery will relate back to the filing of the original complaint 'if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.'" *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (quoting 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure Civil 2d*, § 1497 at 95 (1990)).

Rule 15(c)(1)(A) provides that an amendment will relate back to the original pleading "if the law that provides the applicable statute of limitations allows relation back." *Hunt ex rel. Chiovari v. Dart*, 612 F. Supp. 2d 969, 973 (N.D. Ill. 2009). "If it does, *and* if state law is more favorable than the other provisions of Rule 15(c), state

law governs." *Id.* (emphasis in original). In Illinois, a claim relates back to the original complaint where: (1) the original complaint was timely filed; and (2) the "amended pleadings that the cause of action asserted . . . grew out of the same transaction or occurrence set up in the original pleading . . . ." 735 ILCS 5/2–616(a)–(b).

Here, Plaintiffs do not argue that state law is more favorable than federal law. No matter, as the Court finds that the standards are nearly identical and therefore, it matters not whether the Court applies Illinois or federal law to determine whether the SAC relates back to the original complaint.

The parties agree that the filing of the Cook County Lawsuit and the *lis pendens*, which occurred on November 20 and 23, 2015, respectively, were the basis of the claims alleged in the SAC. Memo. Dismiss at 4; Resp. at 9. Plaintiffs' original complaint was filed on February 22, 2019, within the five-year statute of limitations; therefore, if the SAC relates back to the original complaint, the SAC's claims are timely.

So the question is whether the SAC's intentional interference of prospective economic advantage claims arose from the same "transaction or occurrence" that was alleged in the timely filed initial complaint. 735 ILCS § 12-616(b). Lynd insists that because the four counts of the SAC involve the filing of the *lis pendens* and the SAC was filed over 5 years after the *lis pendens* was filed, this necessarily makes the claims time barred. Memo. Dismiss at 10. Lynd points out that the Prospective Buyers identified in the SAC are different than the third parties identified in the initial and first amended complaints. *Id.* at 11. Further, Lynd states that the

unnamed third parties in the initial complaint were individuals "who never submitted an offer [at the auction] in 2017 due to the zoning change, which occurred, in March 2016." Reply at 5. On the other hand, the Prospective Buyers identified in the SAC "had in fact submitted offers via letters of intent and that said purchase was conditioned upon the removal of the *lis pendens.*" *Id.* This means, reasons Lynd, that the claims in the initial complaint and SAC did not arise from the same transaction or occurrence, as the third parties referenced in the initial complaint chose not to submit bids for the 2016 auction due to the *zoning change*, whereas the Prospective Buyers identified in the SAC *did* submit letters of intent but did not follow through with the purchase due to the *lis pendens. Id.*

Plaintiffs retort that despite not specifically naming the Prospective Buyers in their initial complaint, the original complaint included "general allegations" about the third parties and alleged that "Lynd's wrongful conduct in filing the [Cook County] Lawsuit and Lis Pendens were done with the purpose of preventing Plaintiffs from selling the Pittsfield Properties." Resp. at 10.

The Court finds that the SAC's intentional interference of prospective economic advantage claims arose out of the same transaction, conduct, and occurrence so as to relate back to the original complaint. In Illinois, whether an amended complaint properly relates back and avoids the statute of limitations does not depend on "whether the cause of action pleaded in the amended complaint is the 'same cause of action' pleaded in the original complaint; instead, the focus is on the identity of the transaction or occurrence." *Weber v. Cueto*, N.E.2d 442, 448 (Ill. App. Ct. 1993) (citing

10

*Zeh v. Wheeler*, 489 N.E.2d 1342, 1345 (Ill. 1986)). In *Zeh*, the Illinois Supreme Court explained that the rationale for why an amended complaint, in order to relate back, must be based on the same transaction or occurrence, rather than being based on a specific cause of action, "is bottomed on the belief that if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." 489 N.E.2d at 1348. This reasoning ensures that "a defendant will not be prejudiced so long as his attention has been directed within the limitations period to the facts which form the basis of the claim lodged against him." *Weber*, N.E.2d at 448.

Lynd himself states that Plaintiffs continue to argue the same allegations as the prior versions of the complaint. Memo. Dismiss at 4. "The Sec. Am. Compl. – like the original Complaint and Am. Compl. – is based entirely on the premise that Lynd allegedly caused Partners to file a lawsuit and *lis pendens* and engaged in a scheme to downzone the Properties . . . ." *Id.* By his own admission, he has been "made aware of the occurrence or transaction" that formed Plaintiffs' claims, allowing him to prepare for all claims alleged by Plaintiffs. *Zeh*, 489 N.E.2d at 1348. Lynd's argument that the specific claims alleged in the original complaint and the SAC differ is irrelevant—the specific causes of action or identity of the third parties are not dispositive of whether a claim properly relates back to the original complaint. Memo. Dismiss at 10–11; Reply at 4–6. Rather, so long as the defendant has been made aware of "the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." *Zeh*, 489 N.E.2d at 1348.

As Plaintiffs' original complaint was timely filed and the intentional interference claims alleged in the SAC arise out of the same transaction or occurrence as previous complaints, the Court finds, in viewing the allegations in the light most favorable to Plaintiffs, that Plaintiffs' claims for intentional interference with prospective economic advantage are not time barred. So, the Court now turns to whether Plaintiffs have adequately stated claims for intentional interference of prospective economic advantage.

### B. Reasonable Expectation of Entering into a Valid Business Relationship with a Third Party

Lynd asserts that Plaintiffs continue to fail to properly allege a reasonable expectation to enter into a valid business relationship. Mot. Dismiss at 1; Memo. Dismiss at 6. Lynd notes that: "[a] 'reasonable expectation' requires more than the hope or opportunity of a future business relationship." Memo. Dismiss at 6 (citing *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007)). Here, argues Lynd that is all Plaintiffs have alleged *Id.* at 8–9.

Not so, counter Plaintiffs, as the SAC alleges their reasonable expectation of entering into a valid business relationship with a third party. Plaintiffs point specifically to paragraphs 63–64, 83–84, 103–104 and 123–124, which "identify prospective buyers of the Building and how Plaintiffs had reasonable expectations of entering into business relationships with such persons." Resp. at 5. Additionally, they reference paragraphs 67–68, 87–88, 107–108 and 127–128, alleging they "set forth the purchase prices proposed in letters of intent submitted by said identified prospective buyers . . . ." *Id.*

The Court finds that Plaintiffs have adequately alleged a reasonable expectation to enter into a valid business relationship. The Court previously held that Plaintiffs' listing of a "variety of third-party purchasers and hotel operators and lessees in their Amended Complaint" was not enough to "adequately allege a reasonable expectation of entering into a valid business relationship with any third party." 11/13/20 Order at 11. Specifically, the failure to "allege any facts about the state of their negotiations with [the] companies" caused their claims to be "conclusory" in nature. *Id.* at 11–12.

Under Illinois Law, Plaintiffs can successfully allege a reasonable expectancy of entering into a business relation by alleging prospective business with specific companies. *Schuler v. Abbott Labs.,* 639 N.E.2d 144 (Ill. App. Ct. 1993). In *Schuler*, the court found that the plaintiff successfully alleged "a business expectancy with a specific third party . . . because [Plaintiff] alleged business opportunities with three identifiable companies." *Id.* at 147. The Court finds that Plaintiffs have done the same.

Here, Plaintiffs have alleged four distinct business opportunities with the Prospective Buyers and have included the alleged sum offered in letters of intent for all four entities. SAC, ¶¶ 63, 67, 83, 87, 103, 107, 123, 127. As the Court previously held, Plaintiffs are not required to be "parties to a contract with a third party to state a claim for tortious interference with prospective economic advantage." 11/13/20 Order at 11–12. But that a "'reasonable expectation' requires more than a 'hope or opportunity of a future business relationship.'" *Id.* at 12 (citing *Bus. Sys. Eng'g, Inc.,*

13

520 F. Supp. 2d at 1022). Plaintiffs' allegations in the SAC amount to more than a "hope" for such a relationship.

Therefore, the Court finds, in viewing the allegations of the SAC in the light most favorable to the Plaintiffs, that Plaintiffs have successfully alleged the first element of a tortious interference with prospective economic advantage claim by sufficiently alleging a "reasonable expectancy of entering into a valid business relationship" with each of the Prospective Buyers. *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015).

### C. Direct Tortious Action Against a "Specific" Third Party

Lynd maintains that to state a tortious interference claim, Plaintiffs must allege that Lynd took action against a specific third party. Lynd contends that Plaintiffs fail to do so. In Illinois, "[a]ctions that form the basis of a tortious interference claim must be directed at third-party business prospects." 11/13/20 Order at 12 (citing *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007)); *see also Faith Freight Forwarding Corp. v. Ruiz*, 1997 WL 159207 at *6 (N.D. Ill. Mar. 24, 1997) ("Under Illinois law, a plaintiff must also allege that the defendant's interfering conduct was directed toward some third party with whom the plaintiff expected to do business."). Further, a plaintiff must "allege[] a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Id.* (citing *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005)); *see also Inteliquent, Inc. v. Free Conferencing Corp.*, 2017 WL 1196957 at *16 (N.D. Ill. Mar. 30, 2017); *Unique*

*Envelope Corp. v. GSAmerica, Inc.*, 2002 WL 598511 at *4 (N.D. Ill. Apr. 18, 2002). The interference itself must be "intentional and unjustifiable." *F:A J Kikson*, 492 F.3d at 800.

Lynd contends that "a tortious interference claim fails where the plaintiff merely alleges that 'acts had an impact on the [third party], not that the acts were directed at the [third party] . . . .'" Memo. Dismiss at 7 (citing *D&K Properties Crystal Lake v. Mut. Life Ins. Co. of New York*, 1996 WL 224517 at *8 (N.D. Ill. May 1, 1996), *aff'd sub nom. D & K Properties Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257 (7th Cir. 1997)). The Court previously determined that the lawsuit Lynd filed against Plaintiffs could not be considered an action against a third party. 11/13/20 Order at 12–13; *see also D&K Properties*, 1996 WL 224517 at *8.

Plaintiffs do not disagree that Lynd's actions must have been directed at a third party; however, Plaintiffs insist that the SAC properly alleges such actions. In their Response, Plaintiffs cite to two out-of-Circuit cases, specifically *In re Gormally*, 550 B.R. 27 (Bankr. S.D.N.Y. 2016) and *Fafard Real Estate & Dev. Corp. v. Metro-Bos. Board, Inc.*, 345 F. Supp. 2d 147 (D. Mass. 2004), to suggest they have sufficiently alleged Lynd's actions were directed at third parties. Plaintiffs assert these cases support that Lynd's filing of a *lis pendens* was directed at third parties and therefore sufficient to sustain an intentional interference with prospective economic advantage claim. Resp. at 8.

In his Reply, Lynd retorts that *In re Gormally* and *Fafard* are "out of state cases" and therefore "are entirely irrelevant to the present dispute." Reply at 3 n.2.

15

True, out-of-Circuit cases are not binding upon this Court. *See Ins. Tr. v. River Trails Sch.*, 2003 WL 22016880, at *1 (N.D. Ill. Aug. 27, 2003) (citing *Colby v. J.C. Penney Co. Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987)). However, such cases, in the absence of controlling in-Circuit decisions, can be persuasive authority. *Id.* Still, upon the Court's analysis of *In re Gormally* and *Fafard*, the Court finds them distinguishable.

In *In re Gormally*, the plaintiffs filed suit against the defendant-debtor for breach of a contract after defendant failed to proceed with the purchase of the plaintiffs' property. 550 B.R. 27, 33. The plaintiffs also asserted a claim of intentional interference with prospective economic advantage based on a *lis pendens* filed by the defendant, which prevented the plaintiffs from selling the same property to a different party. *Id.* The court found that the plaintiffs had successfully alleged all elements of an intentional interference with prospective economic advantage claim, specifically that the filing of the *lis pendens* in the case "interfered with the Plaintiffs' ability to enter into a contractual relationship for the sale of [the property] until Defendant's litigation was concluded or the Lis Pendens was lifted." *In re Gormally*, 550 B.R. at 42. Importantly, however, the court found that the filing of the *lis pendens* in *In re Gormally* was *not* done to effect specific performance, which is the proper function of a *lis pendens*. *Id.* at 43–44. Rather, observed the court, the *lis pendens* was filed as a means to obtain the return of defendant's down payment. *Id.* In other words, the *lis pendens* was filed as a wrongful means to apply economic pressure on the plaintiffs. *Id.* at 44–45.

In this case, unlike in *In re Gormally*, Lynd's *lis pendens* sought specific

16

performance, the "proper function" of a *lis pendens*. Specifically, Partners' complaint, filed two days before the *lis pendens*, includes an allegation, titled: "Count IV: Reformation of Contract and Specific Performance." SAC, Exh. C. Plaintiffs, too, acknowledge Partners' request for specific performance. SAC ¶¶ 31–35 (quoting Partners' Complaint requesting specific performance).

Similarly, the Court finds *Fafard* distinguishable. There, the plaintiff sued the defendant-property owner for specific performance of a purchase and sale agreement for land that the plaintiff intended to develop. The plaintiff filed a *lis pendens* on the property. 345 F. Supp. 2d at 149. The defendant filed counterclaims, including a claim for intentional interference with advantageous business relations under Massachusetts law. *Id.* at 153. The court denied the plaintiff's motion to dismiss the counterclaims, although there was no allegation that any particular buyer had entered into negotiations to purchase the property. *Id.* at 153–54. The court found that the defendant-property owner had adequately pled a claim for tortious interference because the property in question was "an attractive investment" which the owner was actively attempting to sell. *Id.* at 154. In so holding, the court relied on Massachusetts cases stating that "'[a] probable future business relationship from which there is a reasonable expectancy of financial benefit is also enough' to survive the notice pleading standard of Rule 8 in an interference with advantageous relations case." *Id.* (quoting *Powers v. Leno*, 509 N.E.2d 46, 49 (Mass. App. Ct. 1987)). As discussed above, Illinois law requires not only that the alleged interference be directed at a third party, but also that the filing party had more than merely "the

17

hope or opportunity of a future business relationship" with a third party. Moreover, *Fafard* engages in no analysis of whether the defendant's filing of the *lis pendens* was "directed at" any unknown third parties. *Fafard*, relying on distinguishable Massachusetts law, does not help Plaintiffs.

Plaintiffs insist that they "need only identify the class of persons to whom the conduct is directed" and that they have properly alleged that "Lynd's actions were in fact directed to third parties." Resp. at 7. However, they have failed to properly do so. Plaintiffs' Response simply points to the paragraphs of the SAC which allege that the Prospective Buyers sent letters of intent to Plaintiffs, and Lynd was aware of Plaintiffs' negotiations with prospective buyers and intended to harm plaintiffs through the filing of the *lis pendens*, but those paragraphs do not allege that Lynd directed his conduct *at* the third-party Prospective Buyers. *Id.* at 5–7 (citing SAC ¶¶ 65–136).

The Court finds that, in viewing the allegations of the SAC in a light most favorable to Plaintiffs, Plaintiffs have failed to properly allege a claim for intentional interference with prospective economic advantage. The Court therefore dismisses Counts I–IV of the SAC.

## II.     Slander of Title (Count V)

In Count V, Plaintiffs allege that, by filing the Cook County Lawsuit and the *lis pendens*, Lynd acted with "malice toward Plaintiffs" and that Plaintiffs' title to the Property was "disparaged." SAC ¶¶ 138–139. Further, as a result of the *lis pendens* being filed, "a reputable title insurance company would not issue title insurance to a

prospective buyer of the Properties" and as a result, "Plaintiffs suffered damages." *Id.* ¶¶ 140–141. Lynd argues that Plaintiffs fail to state a slander of title claim.

"To make out a cause of action in slander of title claim in Illinois, a plaintiff must allege a false and malicious publication, oral or written, of words which disparage [its] title to property resulting in special damages." *Ringier Am., Inc. v. Enviro-Technics, Ltd.*, 673 N.E.2d 444, 446 (Ill. App. Ct. 1996) (internal citations omitted).

Lynd contends that Plaintiffs' claim must be dismissed because: "(1) Lynd did not make any false statements; (2) Plaintiffs failed to plead special damages with the requisite specificity; and (3) any statements were made in the course of legal proceedings and thus, are absolutely privileged." Memo. Dismiss at 11–12. The Court agrees that Plaintiffs fail to allege a false statement and as such, fail to state a claim for slander of title.

## A. False Statements

"An essential element of a cause of action for slander of title is that the statements used be both false and malicious." *Ringier, Ltd.*, 673 N.E.2d at 447. Lynd argues that the SAC fails to allege that the *lis pendens* contains any false statements. Memo. Dismiss at 12.

At the outset, the Court agrees with Plaintiffs—and Lynd does not dispute— that a slander of title claim based on the filing of a *lis pendens can* be actionable. Resp. at 11 (citing *Pecora v. Szabo*, 418 N.E.2d 431 (Ill. App. Ct. 1981); *Greer Properties, Inc. v. LaSalle Nat. Bank*, 1989 WL 135223 (N.D. Ill. Oct. 6, 1989)); *see*

*also White v. Richert*, 2016 WL 6139929 at *7 (N.D. Ill. Oct. 21, 2016) (a falsely recorded *lis pendens* "may be the basis for an action for slander of title"); Memo. Dismiss at 12.

Lynd contends that the *lis pendens* is nearly identical to the *lis pendens* filed in *Ringier*. Memo. Dismiss at 12. In *Ringier,* the court found that "[a]lthough the plaintiff has alleged that the defendant's counterclaim was false and malicious . . . the *lis pendens* notice states nothing more than the fact that litigation was pending in the circuit court concerning the property." *Id.* at 447. Because the *lis pendens* simply stated that a case was pending in the circuit court, "it was in no sense 'false' and cannot form the basis of liability." *Id.* Similarly in *White*, 2016 WL 6139929, the court found that "the *lis pendens* merely put third parties on notice of the underlying lawsuit . . . [the] bare bones allegation that [the] recording of the *lis pendens* notice prevents [a party] from selling [the property] does not allege that the filing of the *lis pendens* itself was false and is not sufficient to state a claim for relief for slander of title." *Id.* at *7. Lynd argues that so too here did the *lis pendens* "merely indicate[d] that a lawsuit had been filed related to the Properties," and consequently is not a falsely recorded statement. Memo. Dismiss at 12–3; SAC, Exh. C.

Plaintiffs counter that Lynd's interpretation of *Ringier* "misses the point." Resp. at 12. Plaintiffs state that "[t]he Lis Pendens puts the world on notice that litigation is pending. Any prospective buyer . . . would refer to the [Cook County] Lawsuit as a result of the Lis Pendens." *Id*. Therefore, Plaintiffs reason that because the sales contract between Partners and Plaintiffs, and the second amendment

thereto, were "annexed to" the Cook County Lawsuit, a "false representation" existed to the public about the Partners' rights to buy the Property "to the exclusion of other buyers." *Id*. The Court finds this argument unpersuasive.

True, the filing of a *lis pendens* "puts the world on notice that litigation is pending." Resp. at 12. The filing of a *lis pendens* on its own, however, does not suggest that the filing of the *lis pendens* was done *falsely*. As the court in *White* observed, "the *lis pendens* merely put third parties on notice of the underlying lawsuit . . . [the] bare bones allegation that [the] recording of the *lis pendens* notice prevents [a party] from selling [the property] does not allege that the filing of the *lis pendens* itself was false, and is not sufficient to state a claim for relief for slander of title." *White,* 2016 WL 6139929 at *7; *see also Pecora*, 418 N.E.2d at 438 (for purposes of determining slander of title, "a showing of malice requires knowledge by defendant that the disparaging statements were false or reckless disregard of this falsity"); *Greer Properties*, 1989 WL 135223 at *2 (a slander of title claim is actionable if it is recorded maliciously).

Here, Plaintiffs here have not alleged that the *lis pendens* itself contained false information or was falsely or maliciously filed. Therefore, the Court finds that the filing of the *lis pendens* cannot form the basis of a slander of title claim.

The Court finds that, in viewing the allegations of the SAC in the light most favorable to Plaintiffs, Plaintiffs have failed to properly allege a claim for Slander of Title. The Court therefore dismisses Count V.

### III. Malicious and Wrongful Impairment of Property (Count VI)[5]

In Count VI, Plaintiffs assert a claim for malicious and wrongful impairment of property. SAC ¶¶ 142–51. Lynd argues that Illinois "does not recognize any such cause of action." Memo. Dismiss at 15 (citing *Shields Enterprises, Inc. v. First Chicago Corp.*, 1987 WL 18356, *3 (N.D. Ill. Oct. 7, 1987); *Pelfresne v. Vill. of Lindenhurst*, 2005 WL 2322228, *15 (N.D. Ill. Sept. 16, 2005)). However, even if Illinois did recognize such a claim, posits Lynd, based on the Court's previous holding, Plaintiffs still fail to properly state such a claim. Memo. Dismiss at 15.

Plaintiffs respond that Illinois law recognizes a claim for malicious and wrongful impairment of property and that Lynd acted with "willful and malicious intent" by filing the Cook County Lawsuit and the *lis pendens*, as well as the alleged scheme with Alderman Reilly to downzone the Properties. Resp. at 14–15 (citing *Easter House v. Felder*, 910 F.2d 1387, 1405 (7th Cir. 1990) ("[A] business may bring an action for the tort of malicious and wrongful impairment of property if it is based upon a civil wrong."); *John Deere Co. v. Metzler*, 201 N.E.2d 478, 487 (Ill. App. Ct. 1964)).

As the Court previously held, "whether Illinois law recognizes the cause of action of willful and malicious injury to property is open to debate . . ."; however, even if Illinois did recognize the claim, Plaintiffs would need to "allege that Lynd harmed their property interests through unlawful action" or a civil wrong. 11/13/20 Order at 18–19. As stated in the Court's previous dismissal Order, Plaintiffs' allegations of the

---

[5] Plaintiffs previously referred to this claim as "Willful and Malicious Injury to Property." Am. Compl. at 17.

filing of the "frivolous lawsuit and the dealings with Alderman Reilly" are not sufficient to support the claim. *Id*. at 19.

Plaintiffs also argue that Lynd committed a civil wrong when he allegedly breached the sales contract, which included a confidentiality clause, when Partners filed the Cook County Lawsuit. Resp. at 14–15. But Plaintiffs fail to cite to—and the Court is not aware of—any authority supporting the proposition that a breach of contract can form the basis of malicious and wrongful impairment of property claim. Moreover, Lynd argues in his Reply that the SAC does not actually allege a breach of a confidentiality agreement, and Plaintiffs only allege such a breach in their Response. Reply at 12. "'It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss,' and Plaintiffs cannot shore up the defects in the amended complaint by adding new 'facts' . . . ." *Martinez v. Sgt. Hain*, 2016 WL 7212501, at *7 (N.D. Ill. Dec. 13, 2016) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). The Court agrees with Lynd that the SAC is devoid of allegations that Lynd breached the confidentiality agreement, and Plaintiffs cannot rely on facts about the alleged breach included in their Response.

The Court finds, in viewing the allegations of the SAC in the light most favorable to the Plaintiffs, that Plaintiffs fail to state claim for malicious and wrongful impairment of property. Therefore, Count VI is dismissed with prejudice.

## Conclusion

For the foregoing reasons, the Court grants Defendant Lynd's Motion to Dismiss Plaintiffs' Second Amended Complaint. Given this is Plaintiffs' third

pleading attempt, the dismissal is with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818–19 (7th Cir. 2013) (affirming dismissal with prejudice of third pleading attempt because "in court, as in baseball, three strikes and you're out"); *see also Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 943 (N.D. Ill. 2011). This civil case is terminated.

Dated: August 16, 2021

United States District Judge
Franklin U. Valderrama

24